UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| BAY AREA PAINTERS AND TAPERS PENSION TRUST FUND, *et al.*,<br><br>Plaintiffs,<br>v.<br>INTERIOR PARTITIONS, INC., a California Corporation, and JOHN HENRY KOOGLE, an individual,<br><br>Defendants. | No. C 10-0851 JSW (MEJ)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. #25)** |

## I. INTRODUCTION

Before the Court is Plaintiff Bay Area Painters and Tapers Pension Trust Fund and its trustees' ("Plaintiffs") motion for default judgment. (Dkt. #25.) On September 15, 2010, Plaintiffs' motion was referred to the undersigned to prepare a report and recommendation. (Dkt. #30.) Based on Plaintiffs' papers, relevant legal authority, and good cause appearing, the undersigned RECOMMENDS the Court GRANT Plaintiffs' motion as follows.

## II. BACKGROUND

Plaintiffs, an employee benefit plan and its trustees, entered into a collective bargaining agreement ("Agreement") with Defendant Interior Partitions, Inc. ("Defendant") on September 7, 2003. (Williams Decl. ¶¶ 2, 3, Exs. A, B, Dkt. #26.) The Agreement requires Defendant to make contributions to Plaintiffs based on the hours worked by employees of Defendant. (Williams Decl.

¶¶ 3, 4, Ex. B, Dkt. #26.) The Agreement incorporates the terms of the Trust Agreements of the District Council 16 Northern California Health & Welfare Trust Fund ("Trust Fund"), which requires Defendant to pay benefit contributions to Plaintiffs and lays out the penalties for failing to do so. (Williams Decl. ¶ 4, Ex. C, Dkt. #26.)

The Agreement also provides that all payroll deductions and benefit contributions are due on or before the fifteenth day of the following month, and will be considered delinquent if not received by the end of the month. (Williams Decl., Ex. B Sec. 4(b), Dkt. #26.) If a contribution is delinquent, the Agreement and Trust Fund mandate that Defendant pay Plaintiffs interest on the delinquent contributions, attorney's fees, and liquidated damages. (Williams Decl., Ex. B Sec. 4(c), Ex. C Sec 3(c ), Dkt. #26.)

Under the Agreement and specified in the Trust Fund, liquidated damages shall be an amount equal to either 20% of the delinquent contributions, or $150, whichever is greater. (Williams Decl., Ex. C Sec. III (C)(2), Dkt. #26.) Interest on delinquent contributions is also due under the Agreement, at a rate of 5% per annum. (Williams Decl. ¶ 5, Ex. B Sec. 4(c ), Dkt. #26.) Further, the Agreement provides for reimbursement of attorney's fees and costs, as well as any other expenses incurred in connection with the delinquency. (Williams Decl., Ex. C Sec. III (E), Dkt. #26.)

In October 2009, Plaintiffs retained Lindquist LLP to conduct an audit of Defendant's payroll records. (Dominguez Decl. ¶¶ 1, 3, 4, Dkt. #27.) Lindquist sent the report to Defendant to dispute the findings, which it did not, and subsequently made the report final on November 25, 2009, and sent it to Plaintiffs. *Id.* at ¶¶ 4, 5. The audit revealed that Defendant failed to report 80 reportable hours, resulting in an under payment of $1,170.40, interest on the underpayment in the amount of $229.34, and liquidated damages in the amount of $150, totaling $1,549.74. (Dominquez Decl., Ex. A, Dkt. #27.) Further, Lindquist LLP discovered there were shortages on contributions for the hours worked by Defendant's employees during the month of August 2009 in the amount of $518.70. (Pls.' Mot. 2:4-9, Dkt. #25.)

Plaintiffs sent three letters to Defendant requesting payment in the above amount. (Williams

2

Decl. ¶¶ 7-9, Exs. F, G, H, Dkt. #26.) On February 10, 2010, John Koogle[1] responded to Plaintiffs on behalf of Defendant, stating that the individual in question in the audit may not be an employee of Defendant and requesting an extension on the payment due. (Williams Decl. ¶ 10, Ex. J, Dkt. #26.) Plaintiffs sent additional letters and documentation to Koogle, confirming that the individual in question was an employee of Defendant, and requesting payment. *Id.* at ¶¶ 11-13, Exs. K, L, M.

Payment not forthcoming, on March 1, 2010, Plaintiffs filed their Complaint. (Dkt. #1.) On May 19, 2010, the Clerk of Court entered default against Defendant, (Dkt. #14), and Plaintiff filed the present motion for default judgment on September 15, 2010. (Dkt. #25.)

All told, Plaintiffs seek compensation as follows:

| | | | | |
|---|---|---|---|---|
| Audit | Contribution Underpayments | | $1,170.40 | |
| | Liquidated Damages | | $150.00 | |
| | Interest | | $229.34 | |
| | | | | **$1,549.74** |
| 7/09 | 20% Liquidated Damages | $608.58 | | |
| | 5% Interest | $16.67 | | |
| | | | $625.25 | |
| 8/09 | Contribution shortage | $518.70 | | |
| | 20% Liquidated Damages | $1,256.64 | | |
| | 5% Interest | $34.43 | | |
| | | | $1,809.77 | |
| 9/09 | 20% Liquidated Damages | $184.70 | | |
| | 5% Interest | $.38 | | |
| | | | $185.08 | |
| **Subtotal** | | | | **$2,620.10** |

---

[1] Plaintiffs' motion for default is against Defendant Interior Partitions, Inc. only, as Defendant Koogle filed a Chapter 7 Bankruptcy Petition and Plaintiffs filed a Notice of Automatic Stay as to Koogle. Accordingly, all references to "Defendant" throughout this Report and Recommendation are to Defendant Interior Partitions.

| | |
|---|---:|
| Audit Testing Fees | **$2,354.25** |
| Attorney's Fees | **$6,454.00** |
| Costs | **$1,073,56** |
| **TOTAL** | **$14,051.65** |

(Pls.' Mot. 2:13-23, Dkt. #25.)

On November 14, 2010, the undersigned held a hearing on Plaintiffs' motion. Defendant did not appear at the hearing and has not otherwise responded.

## III.  DISCUSSION

In their motion for default judgment, Plaintiffs argue that they are entitled to delinquent contribution payments, reimbursement of audit fees, liquidated damages at 20%, interest on delinquent and unpaid contributions, as well as attorney's fees and costs as a matter of law pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), specifically 29 U.S.C. § 1132(g). (Pls.' Mot. 4:16-5:6, Dkt. #25.)

### A.    Legal Standard

Federal Rule of Civil Procedure ("FRCP") 55(b)(2) permits a court, following a default by a defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. *Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one.")).

The Ninth Circuit has enumerated several factors which the court may consider in exercising its discretion as to whether an entry of default judgment is proper: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim and the sufficiency of the complaint; (3) the sum of money at stake; (4) the possibility of dispute concerning material facts; (5) whether default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In applying this discretionary standard, the factual allegations contained in the plaintiff's

4

complaint will be taken as true, except for those relating to the amount of damages. *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.1987); *see also Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378, *1 (N.D. Cal. 2000) ("Generally, upon an entry of default, the factual allegations of the plaintiff's complaint will be taken as true.").

Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c): "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

**B. Jurisdiction**

When considering whether to enter a default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.") Here, the District Court has subject-matter jurisdiction pursuant to 29 U.S.C. §1132, which provides that plan fiduciaries can bring civil actions to enforce the terms of the plan, in that Plaintiffs seek to enforce the provisions of ERISA and the terms of their plans, seek to enjoin the acts and practices of Defendant which violate ERISA, seek equitable relief to redress such violations, and seek all other appropriate relief under ERISA. (Compl. ¶ 6, Dkt. #1.) Further, jurisdiction exists in this Court over all claims by virtue of the Labor Management Relations Act, 29 U.S.C. §141 *et seq.* ("LMRA") specifically 29 U.S.C. §185[2], in that Plaintiffs seek to enforce the terms and conditions of a collective bargaining agreement. *Id.* at ¶ 7.

Personal jurisdiction exists over Defendant, as it is a California Corporation and an employer by virtue of 29 U.S.C. § 1002(5)[3], and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*,

---

[2] This LMRA section discusses venue and jurisdiction, and provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

[3] "[A]ny person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an

("NLRA"), specifically 29 U.S.C. § 152(2)[4]. Defendant entered into the Agreement, which requires the payment of dues to the Union, and contributions to be made to Plaintiffs and other funds more fully described in the Agreement. (Williams Decl. Ex. B, Dkt. #26.) Defendant has a statutory duty to timely make the required payments to Plaintiffs under 29 U.S.C. §1145[5] and 29 U.S.C. §185(a)[6]. By failing to make the required payments to the Plaintiffs, Defendant breached the Agreement and is in violation of the above statutes.

**C.     Application to the Case at Bar**

   1.     Prejudice to Plaintiffs

Under the first *Eitel* factor, the Court must examine whether Plaintiffs will suffer prejudice if default judgment is not granted. *Eitel*, 782 F.2d at 1471-72. It appears to the undersigned that Plaintiffs' claims against Defendant for infringing the Agreement and Trust Fund are sound and well plead. If the Court were to deny plaintiffs' motion for default judgment, Plaintiffs would have no other avenue for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This action has already been stayed against Defendant Koogle following his filing of a personal bankruptcy action. Further delay in securing a judgment in favor of Plaintiffs only serves to increase the chances that Plaintiffs will not be able to recover the amounts due by Defendant. Consequently, the first *Eitel* factor weighs in favor of granting default judgment.

---

employer in such capacity."

[4] "[A]ny person acting as an agent of an employer, directly or indirectly . . . ."

[5] This ERISA section contemplates delinquent contributions and provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

[6] This LMRA section discusses proper venue, and provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

2.   <u>Sufficiency of the Complaint and Likelihood of Success on the Merits</u>

The second *Eitel* factor addresses the sufficiency of Plaintiffs' complaint and the probability of success on the merits of its underlying claim. *Walters v. Statewide Concrete Barrier, Inc.*, 2006 WL 2527776, at *4 (N.D. Cal. 2006) ("A party seeking default judgment must state a valid claim upon which it may recover.").

With regard to this factor, 29 U.S.C. § 1145 provides that every employer who is obligated to make contributions under a collective bargaining agreement shall make them in accordance with the terms of such agreement. As stated above, Defendant is an employer by virtue of ERISA and the NLRA, and is a signatory to the Agreement. In an action to enforce Section 1145, Section 1132 of the same title provides that the plan is entitled to the unpaid contributions, interest thereon, reasonable attorney's fees and costs, and liquidated damages. 29 U.S.C. § 1132(g)(2). Section 1132(g)(2)(C)(ii), the liquidated damages provision, applies when: (1) the fiduciary obtains a judgment in favor of the plan; (2) unpaid contributions exist at the time of suit; and (3) the plan provides for liquidated damages. *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.,* 875 F.2d 212, 215 (9th Cir. 1989); *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1342 (9th Cir. 1988). Once subsection (ii) is triggered, liquidated damages become mandatory. *Idaho Plumbers*, 875 F.2d at 215. Here, the undersigned finds that all the *Idaho Plumbers* factors are satisfied. All unpaid contributions due by Defendant existed at the time the complaint was filed, and the Agreement and Trust Fund (which is incorporated into the Agreement) specifically provide for liquidated damages. (*See* Williams Decl. ¶ 4, Dkt. #26.)

Thus, 29 U.S.C. § 1132(g)(2), including its liquidated damages provision, is applicable in this matter, which makes the likelihood of Plaintiffs' success on the merits relatively high. All allegations in the Complaint have been properly pled. Plaintiffs have submitted declarations from their counsel and the Trust Funds' auditor in support of the factual allegations contained in the complaint and motion for default judgment. Therefore, this factor weighs in favor of granting the motion for default judgment.

///

### 3. The Sum of Money at Stake in the Action

The third *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against Defendant. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel,* 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Board of Trustees of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. 1997). However, default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-3594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). In determining if the amount at stake is reasonable, the court may consider plaintiffs' declarations, calculations, pay stubs, and other documentation of damages. *Id.*

*a.   Unpaid and Underpaid Contributions, Liquidated Damages, and Interest*

The amount of required contributions, as well as rates for liquidated damages and interest, are set forth in the Agreement and Trust Fund to which Defendant is signatory. The amount Defendant owes to Plaintiffs has been established in the declarations of Plaintiffs' counsel and auditor. Thus, the undersigned finds that the amount requested is reasonable.

*b.   Attorney Fees, Audit Fees, and Costs of Suit*

Section 1132(g) of ERISA requires the Court to award Plaintiffs "reasonable attorney's fees and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought. 29 U.S.C. § 1132(g)(2)(D); *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 258 (9th Cir. 1996). Similarly, the Agreement and Trust Fund provide that attorney's fees and auditor fees are justified if a contribution is not made or if amounts are found due and owing to the Plaintiffs during the course of an audit. (Williams Decl., Ex. B Sec. 4, Ex. C III (C), Dkt. #26.) Here, Plaintiffs seek reimbursement for $6,454.00 in attorney's fees and $1,073.56 in costs, representing hours worked by several attorneys and a paralegal in seeking to recoup Defendant's debt to Plaintiffs. (Williams Decl. ¶ 15, Dkt. #26.) Plaintiffs' attorney has submitted a declaration

summarizing the tasks completed and indicating the hours each person spent on this case along with their hourly rates. *Id.* Further, Plaintiffs' auditors have submitted a declaration in support of amounts found due on the audit and costs incurred during the course of the audit, totaling $2,354.25. (Dominguez Decl. ¶ 6, Dkt. #27.) It appears to the undersigned that all amounts incurred in pursuing Defendant's debts are reasonable and should be awarded to Plaintiffs upon default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fourth *Eitel* factor considers the possibility of dispute as to any material facts of the case. Here, Defendant has not filed an answer, so no dispute concerning material facts has arisen. However, the Williams Declaration illustrates that Defendant was aware of the debts due to Plaintiffs, as Koogle spoke numerous times with counsel for Plaintiffs regarding the debts, on behalf of Defendant. (Williams Decl. ¶¶ 10-13, Dkt. #26.) Further, as the Clerk of Court has already entered default, the Court must take all well pleaded facts, except those pertaining to damages, as true. *TeleVideo Systems*, 826 F.2d at 917-18. Additionally, the evidence submitted by Plaintiffs in support of their motion supports Plaintiffs' account of the events. The record reflects that little possibility of dispute as to Defendant's liability for damages exists.

### 5. Possibility of Excusable Negligence

The fifth *Eitel* factor contemplates the possibility that Defendant's default was the result of excusable neglect. Under this analysis, the Court considers whether Defendant was put on adequate notice to apprise them of the pendency of the action brought against it. *Phillip Morris USA, Inc. v. Castworld Products*, Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). In addition, the Court also considers whether the circumstances surrounding Defendant's failure to answer the complaint are sufficient to excuse or justify its default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (Default cannot be attributed to excusable neglect where defendants were properly served with the complaint, the notice of entry of default, and the papers in support thereof).

Here, there is little possibility of excusable neglect. As noted in the Williams Declaration

and Plaintiffs' motion, Defendant was duly served with the complaint and summons in this Action. (Williams Decl. ¶ 15, Dkt. #26; Pls.' Mot. 3:3-13, Dkt. #25; Dkt. ##4, 9.)  Plaintiffs likewise sent Defendant the notice of default and informed Defendant of the default judgment hearing, and of the undersigned's Notice of Referral and deadline to file any opposition to the motion.  (Dkt. ## 12, 15, 20, 24, 29.)  Despite this, Defendant did not file any opposition, and has not otherwise made an appearance in this action.

### 6. Policy for Deciding on the Merits

Under the final *Eitel* factor, the Court must consider the strong policy of the federal courts in favoring decisions on the merits.  However, this policy is not dispositive; rather, the Court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors.  *PepsiCo, Inc. v. California Security Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Furthermore, the "defendant's failure to answer the plaintiff's complaint makes a decision on the merits of a case impractical, if not impossible." *Id*.  As a consequence, the policy of favoring decisions on the merits does not necessarily preclude a court from granting a default judgment when the defendant fails to respond.  *Walters*, 2006 WL 2527776, at *6.

Here, Defendant has refused to participate in the proceedings brought against it, despite adequate notice and opportunity to do so.  Thus, default judgement is appropriate despite the strong policy of the federal courts in favoring decisions on the merits.

## IV. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that the Court GRANT Plaintiffs' motion for default judgment and award Plaintiffs $14,051.65 as follows:

(1) $1,549.74, the sum of contribution underpayments and liquidated damages and interest thereon; plus

(2) $625.25 in liquidated damages and interest accrued in July 2009; plus

(3) $1,809.77, the sum of the contribution shortage in August 2009 and liquidated damages and interest accrued; plus

(4) $185.08 in liquidated damages and interest accrued in September 2009; plus

(5) $2,354.25 in audit testing fees; plus

(6) $6,454.00 in attorney's fees and $1,073.56 in costs.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: November 5, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**